EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO BONILLA, acusado y apelante.

Núm. 9635.—*Sometido:* Noviembre 20, 1942. *Resuelto:* Noviembre 30, 1942.

*Domingo Candelario,* abogado del apelante; *Hon. Procurador General Interino M. Rodríguez Ramos, (ex Procurador General George A. Malcolm,* en el alegato) *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SR. TODD, JR., emitió la opinión del tribunal.

Francisco Bonilla apela de la sentencia de un año de cárcel que le impuso la Corte de Distrito de Ponce por un delito de hurto de menor cuantía. Al terminar la prueba de cargo el acusado presentó una moción de *non suit,* la que fué declarada sin lugar, y, no habiendo el acusado presentado prueba de defensa, la corte dictó la sentencia indicada. Por el segundo señalamiento de error se insiste en esta cuestión y, por

tanto, nos limitaremos a examinar la prueba aportada en el caso pues de tener razón el apelante procedería la revocación de la sentencia.

Hemos leído la transcripción de la evidencia y somos de opinión que el resumen que hace el fiscal de esta corte en su alegato de la prueba circunstancial que tiende a conectar al acusado con el delito imputádole se ajusta sustancialmente a lo declarado por los testigos. Dicho resumen es el siguiente:

". . . Doña Nicolasa Vélez vivía en el barrio Vegas Arribas de Adjuntas completamente sola en una pequeña casa. El acusado Bonilla la conocía y sabía que vivía sola. Cada vez que la veía le preguntaba si ella siempre 'tenía plata'. En la noche del 25 para el 26 de enero de 1942, doña Nicolasa estaba en casa de su hijo donde se celebraba una jugada con baraja. Ella había ido allí y en vista de que su nuera estaba enferma, se tuvo que quedar. El acusado llegó allí en compañía del testigo Moll. Alrededor de las doce de la noche doña Nicolasa, a indicaciones de su hijo preparó café. El acusado se tomó un café y delante de doña Nicolasa se recostó o tiró sobre una estiba de cajas que había y le dijo 'doña Micaela ¿Ud. tiene mucho dinero'?, preguntándole entonces si dormía sola en su casa. Alrededor de las tres de la mañana, se fué la gente y el padre del acusado lo invitó para que se fuera con él a su casa, indicándole el acusado entonces que él iría por la mañana, porque él no iba para el pueblo. El acusado le pidió al hijo de doña Nicolasa dos velas y una caja de fósforos y se marchó en unión al testigo Moll y a otro nombrado Esteban Ortiz. Caminaron todos juntos quedándose Esteban Ortiz en su casa, antes de tener que pasar por la casa de doña Nicolasa. Continuaron entonces Moll y el acusado y mientras pasaban frente a la casa de la señora el acusado dijo: 'Doña Nicolasa debe tener dinero ahí'. Siguió caminando en unión de Moll como dos hectómetros y entonces le dijo a su acompañante que él, el acusado, se quedaba en la barraca de don Andrés González porque no tenía donde dormir en el pueblo. Moll continuó entonces hacia el pueblo y el acusado regresó hacia atrás. Mientras caminaban de la casa de la jugada hacia el pueblo, ninguna otra persona los seguía y todo estaba tranquilo. Esa noche, la casa de doña Nicolasa estaba cerrada, y fué penetrada, descerrajándosele la puerta del cuarto y desapareciendo de allí prendas de oro, media docena de trajes, un traje de algodón, un pote de peras, otro de melocotones y dinero en

plata de una limosna que había recogido doña Nicolasa para pagar un rosario. Apareció regada en el piso una botella de gas que había en una tablilla. A la mañana siguiente, entre siete y ocho de la mañana, el acusado visitó al testigo Moll, su acompañante de la noche anterior y le dió la noticia de que a doña Nicolasa la habían escalado (la casa) y le pidió que si le preguntaban a él (a Moll) dónde había él (el acusado) dormido, que dijera que en su casa (la de Moll). Estuvieron juntos alrededor de media hora y luego salieron a la calle.

Alrededor de una semana más tarde, doña Nicolasa fué visitada por un tío del acusado y . . . le pidió que viera a la madre del acusado porque ella quería verla. Cuando ella fué la madre se echó a llorar diciéndole que el único capital que tenía eran dos vaquitas. Le mandó a ofrecer una a doña Nicolasa por lo que le había hecho su hijo el acusado.''

Los únicos elementos de esta prueba que pueden sostenerse que tienden a conectar al acusado con el delito son los siguientes:

1. Las preguntas del acusado a la perjudicada, con anterioridad a, y en la noche en que se cometió el hurto, en el sentido de si ella tenía dinero.

2. Las manifestaciones al testigo Moll, al pasar por la casa de la perjudicada de que ''Doña Nicolasa debe tener dinero ahí' y el hecho de que dijo que se quedaba a dormir en una barraca porque no tenía donde dormir en el pueblo, y

3. La conducta del acusado al día siguiente cuando fué donde Moll y después de informarle que habían escalado la casa de doña Nicolasa, le dijo que si le preguntaban dijera que había dormido en su casa (la de Moll).

Decimos que esta es la única prueba que tiende a conectar al acusado con el delito, porque la actuación posterior de su tío y de su madre en cuanto al ofrecimiento de una vaca a la perjudicada, no habiéndose probado que el acusado interviniera o estuviera presente cuando eso ocurrió, no puede tender a incriminarlo. La propia corte inferior eliminó este elemento de prueba al dictar su sentencia (T. de E. pág. 24).

Somos de opinión que la prueba circunstancial en este caso aportada no es suficiente para sostener la convicción del acu-

sado. Que Bonilla le preguntara a la perjudicada si tenía dinero, que le dijera a Moll que debía tenerlo en la casa, unido al hecho de haberle dicho a Moll al día siguiente que habían escalado la casa y que dijera que él había dormido en su casa, son circunstancias que tienden a conectar al acusado con el delito, pero aún cuando todas esas circunstancias son compatibles con la culpabilidad del acusado también pueden serlo con cualquier hipótesis razonable de su inocencia. Todos los que estaban en la jugada sabían que la casa de la perjudicada estaba sola y que ella permanecía en casa de su hijo. Los objetos hurtados no fueron ocupados ni en forma alguna se probó que el acusado los tuviera en su posesión. c/f *Pueblo* v. *Laureano,* 20 D.P.R. 7. Repetidamente ha resuelto esta corte que no es suficiente, en casos en que la única prueba aportada es de carácter indiciario, que las circunstancias probadas hagan probable la culpabilidad del acusado sino que esa prueba debe ser incompatible con cualquier teoría razonable de inocencia.

En todo caso criminal cuando la única prueba presentada es circunstancial para que pueda sostenerse una convicción, dicha prueba al ser apreciada en conjunto, debe producir, como se dijo en el caso de *Commonwealth* v. *Russ* (Mass.) 122 N. E. 176, *"una certeza moral de culpabilidad* y excluir cualquier otra hipótesis razonable". En la prueba del caso de autos hay elementos que tienden a señalar al acusado como probable autor del hurto pero esos elementos no pueden producir la certeza moral de su culpabilidad. A lo sumo levantan una sospecha en contra del acusado y es bien sabido que a nadie puede condenarse por meras sospechas, no importa cuán fuertes sean. c/f *State* v. *Johnson,* 293 N.W. 822.

*Debe revocarse la sentencia apelada y absolverse al acusado.*